Good morning, everyone. And welcome and our thanks to the court staff and to counsel for their flexibility and appearing virtually for today's arguments. A word of warning or perhaps comfort. If we do run into technical glitches, which we do occasionally, we will not be counted against counsel's time, and we'll make adjustments as needed. The first case for argument today is Cody Christopherson versus American Insurance Appeal number 2831. We will hear first from Mr. Gleisner for Mr. Christopherson. Thank you, Your Honor. May it please the court. I am Attorney Bill Gleisner. And while Attorney Greg Cook and I appear for appellant Cody Christopherson, I will argue on behalf of the appellant this morning. And as the court will note, I have reserved five minutes for rebuttal. For ease of reference, and with the court's permission, I will refer to Mr. Christopherson as Cody during this argument. I will begin with the Rooker-Feldman doctrine. The first question is, in this case, the same thing as the state court judgment. I would answer this way. Part of the Rooker-Feldman doctrine's namesake DC Court of Appeals versus Feldman is still good law. I would submit that the facts and reasoning in Feldman support an argument that the building does not have to be the result of a traditional adjudication. There was no trial or judgment in Feldman. Nevertheless, the Supreme Court concluded that was immaterial. According to the Supreme Court, and I quote, the proceedings did not assume the form commonly associated with judicial proceedings. But the form of the proceeding is not significant. It is the nature and effect which is controlling. Under Wisconsin law, a raise order results in a de facto judgment that a building must be torn down. Consistent. Yes, Your Honor. We have said that the Rooker-Feldman doctrine doesn't bar federal jurisdiction over administrative proceedings. So how would this differ from that? This seems even more removed. This case, Your Honor, is or involves a situation that is neither administrative or adjudicative. In fact, it's very similar to the facts of the Feldman case itself, which was a D.C. bar admissions issue. And the raise order is sui generis under Wisconsin law. It's a it's a proceeding that is for all practical purposes, tantamount to a judgment, because if you don't appeal it within a 30 day period of time, it's binding, just like a unappealed circuit court judgment. That's how I would answer that, Your Honor. Mr. Gleisner, I confess I have no idea what Rooker-Feldman has to do with this case. The the defendant, neither you nor the defendant, is challenging the raise order. The raise order was issued. The building was destroyed and American Insurance paid the policy limits for total destruction. Where is there a challenge to the raise order by anybody, let alone by a party invoking federal jurisdiction? Well, Your Honor, I think that the the Rooker-Feldman doctrine doesn't require a challenge to an order. It's a question of jurisdiction. And this court has adopted a two criteria methodology for determining subject merit jurisdiction. And I would submit that this court doesn't have jurisdiction over a raise order in this case, because the action in federal court is inextricably intertwined with a state court judgment. And the defendant, ASI, had an opportunity to contest the raise order in the circuit court of Milwaukee County. Perhaps my colleagues may have some other questions on that subject, but let's assume we have jurisdiction. Can you identify for us in the record the actual payments that were made to Mr. Christofferson? Your Honor, the record shows that $143,000 was paid under the second policy, and that under the third policy, $11,000 was paid to... The first policy, right? First policy. Sorry, Your Honor. First policy, $11,000 was paid to Mr. Christofferson. And also, there were about $26,000 in payments for alternate living expenses. There were, Your Honor. Okay. And then there were... Water damage was paid. Water damage was... Only a part of it was paid. Only $2,000 of it was paid, Your Honor. And was that included in any of the previous three? The $11,000, or was that a supplemental payment? That $2,000, Your Honor, was separate and apart from the claimed $20,000 in water damage that remains to this day unpaid. Okay. But that was part of the $11,000 that was paid, correct? The $2,000... That's correct, Your Honor. Thank you. Okay. Okay. I also think it would be appropriate at this point to address a question that I think is implied with what you've been asking, Your Honor. $37,000 was not paid under the first policy when the first tree fell on the house. And there were a number of other payments that were not made, such as Cody's cost in tearing down the building with his own labor. ALE was not paid in a timely manner. That's the alternate living expenses. And they have not paid for the water damage. So the $37,000 was not backed up by any receipts, correct? So those are repairs that were never actually carried out. Those repairs were not carried out. The repairs were... The value of the repairs was set at July 20th of 2018. And when was American first notified of it? Your Honor, we maintain that they were notified of it by Mr. Voigt a month or two after the assessment was made, the estimate was made. I know that opposing counsel will state that they didn't find out till December 3rd. That's a disputed fact, Your Honor. What's the evidence that you rely upon? I don't know if it's material, but what's the evidence you rely upon for Mr. Voigt's earlier notice? Your Honor, conversations that Mr. Voigt had with claims adjusters as detailed in Mr. Voigt's declaration on file in the record of this appeal, Your Honor. And of course, it was first in the record of the district court. So if I may that were due in this case were not paid when they were due. And under Wisconsin law, and this is cited in our recent chief at about page 41, I believe, under Steele v. Paysetter Motor Company at 2003 WISAP 242, quote, when performances do anything short of full performance is a breach even if the party who does not fully perform was not at fault. And even if the defect in her performance was not substantial. So close quote. And so we maintain the $37,000 was not paid under the first policy. We maintain that the cost of tearing down the building has never been paid. The ALE that was due for June 6th, August 17th when Mr. when evidence in the that you had submitted your ALE receipts to ASI as they had directed. I can't put my finger on the record right now, Your Honor. I didn't see anything that supported that you submitted receipts to them for these alternative living arrangements as they have your honor. I'm sorry. I apologize as they had requested. I think your honor may be not referencing ALE. You may be referencing water damage, Your Honor. No, I'm referencing the alternative living expenses where they had asked for receipts twice at least and you did. I didn't see anything in the record that they your client had actually provided ASI with those receipts. ALE was handled by a different company, Your Honor and they admitted that these receipts had been received because they did in fact pay for the ALE or otherwise payment of the ALE. But you're seeking breach against ASI for not paying and ASI asked your more, but at least twice and I didn't see anything supporting that your client responded to ASI's requests and sent in the receipts to ASI who you're seeking the breach against. Yes, we are seeking the breach against ASI, Your Honor. I don't have I can't put my hand on exactly where the proof is of the ASI notice, but we did provide notice to them. But the notice had to be more than just hey, you owe me this. The contract called for and they specifically asked for receipts and I didn't see anything supporting that you sent those receipts. Your Honor other than what I have referenced, I don't have any response to that. Mr. Gleisner, could I just ask you do I understand correctly that you're asserting a right to twice the total value of the house? No, Your Honor. We're we're asserting and just for the record we're into our rebuttal time. We're asserting Your Honor that the statute under which this claim was made 632.05 sub two is capable of being read that there would be two payments. But in fact, our position is that the trees that fell fell at different times and there's a dispute in the record as to whether or not the first tree caused most of the damage or the second tree caused most of the damage. Given that the company that the Why does it matter anymore whether how much damage was done by the first tree if you're not seeking double payment, which was what I understood from your brief? Well, Your Honor, we are not we are not seeking payment under both policies. We submit that both policies. It's unclear what damage was done under the first policy and under the second policy, which we think is a jury question. Why would it matter if they paid for the total destruction of the house? Your Honor, we don't think they paid for the we don't think that we they paid for the total damages due to the plaintiff in terms of the dairy tearing down on the building in terms of the ALE in terms of the water damage and we also think that the first policy and the second policy. We also think that the damage is done under those two policies. It would require a jury to tell which one what damages were done when but the $37,000 was due under the first policy and was never paid. Okay, and. Is it with respect to the labor that Mr Christofferson put into tearing down the house was a claim submitted to that effect in writing? No, Your Honor. Okay. Yes, okay. Maybe we'll save the rest of your time for rebuttal if you like and I may have a little bit of extra time, but we'll see. Okay. Thank you very much. Mr. Gleisner will next hear from Mr. Divine for appellee. Thank you judges. This is Tom Divine. I represent the American Strategic Insurance Company. I will refer to them as ASI during the course of this conversation. I I will start with a brief. Look at the Rooker-Felman issue since it's jurisdictional. It is the first question the court needs to answer the problem with what has been raised here is that under Exxon the very narrow Rooker-Felman doctrine is limited to state court losers with state court judgment. In this case, there is no judgment. There is no loser neither ASI nor Christofferson has lost anything and we've cited the case law that suggests that administrative decisions do not qualify for the judgment element that is at issue here. So as a consequence, I'm sorry. So as a consequence, we believe that the that the With respect to the claim that is advanced here, the statement of facts that were put in with respect to the nature of what was paid by ASI is clearly delineated in their statement of facts. They made payments for actual cash value. They made payments for some damage. They made payments for some water amounts. The best list of what we made can be found at paragraph seventeen and twenty-nine of the plaintiffs suggested facts. It is clear though that ASI took its obligations here under its policy and made payments as identified. Once the house was declared a total loss and it was issued a raise order, the company made the payment of the hundred and forty-three thousand dollars which referenced the policy limits that were at issue and a six-thousand-dollar payment for some incidental damages that were present. And didn't Mr. Christofferson's lawyer at the time agree that that was the amount? There is an email exchange that is provided where the the concept of undisputed in the case is $143,384. So there was a payment made by ASI in addition to the earlier payments that were made that provided a compensation to Mr. Christofferson for the total loss of his home and incidental damages that were provided in terms of claims that were presented. Mr. Christofferson has alleged and I'm not entirely sure I understand the argument that's entitled to another limit of damages from ASI. The first difficulty here is that there are no facts that were cited by any of the affidavits that were prepared here. Mr. Christofferson, Mr. Vogt, Mr. Hintz, and Mr. Beal who is the house was a total loss at any point in time much less that it had been to a point where it wasn't identifiable as a home. That was resolved on November 21st when Richfield declared that it was a total loss and ordered it to be raised under the $143,384 limit. At that point in time, the value added a portion of the policy applied and the policy limits were available at that point in time. They were paid and Mr. Christofferson received the benefit of his policy. That argument wasn't raised below either was it? The $632,005? No, it was not. Although I realize that this court is a de novo review and I think that the argument with respect to $632,005 is clearly erroneous but you're right it was not raised below. The central theme that we had in this case was identify for us what breaches of this contract occurred to define what additional damages are available to us. In the trial court, the plaintiff identified a breach of contract for failure to pay repairs, failure to pay ALE, failure to pay costs of the raise order, and failure to pay for personal property. All of those matters require conditions with respect to the recovery. The cost of repairs must be based upon actual repairs. You have to provide receipts. You need to show that you did something. Plaintiff argues that or Mr. Christopherson argues that it was impossible for him to accomplish that but impossibility doesn't apply to a condition in the policy which says if you do this we will do that. The opposite is also true. If you don't do this, you won't get that. So repairs are only recoverable if you in fact make repairs and you incur costs associated with it. That did not happen here. Mr. Devine, how does this homeowner's policy work if the homeowner just doesn't have the cash available? Let's suppose a wholly different scenario here. With just the first tree, the damage is done, repairs are needed, and Mr. Christopherson is unable to advance the money to pay for those repairs. What happens? Well, I can't tell you what experience there would have been in this particular circumstance but I can tell you that generally the industry would send somebody out to determine what the repairs were that were necessary and what the costs of those repairs would be. The industry would then set aside the funds to accomplish that. They may actually pay as they go along but they would work with the homeowner and whoever is going to perform the repairs. The purpose of this clause is to assure that the homeowner does the repair and that is the central theme. So that has been my experience with respect to cash challenged homeowners. Can I ask you to address some of the procedural issues that were raised? As I understand it, your original motion for summary judgment was a pretty bare bones kind of cell attacks. Plaintiff has the burden and doesn't have anything. Could you just spell out for us the earlier situations in or stages in the case in which you think plaintiff had an opportunity to and should have identified those alleged breaches before you filed your motion for summary judgment? Yes, we brought on a motion with respect to discovery that was proposed in the case and relied on the Brett Horst decision for the proposition that in Wisconsin you have to show an actual breach of the contract before you get bad faith discovery. We raised that issue because the gravamen of Brett Horst is that behavior is not the perspective. It's whether or not you in fact breached the contract. The first approach to that problem by the Christofferson group was to argue that their pleadings were broad enough to include the claim. In conjunction with our Brett Horst matter, we had put in Mr. Hanlon's affidavit that laid out all of the payments that ASI had made and provided all of the information concerning the various matters that have been adjusted during the course of the early process. The court made the decision that you can't just stand on the allegations of your complaint and that is precisely what Brett Horst provides for. You have to provide at least some sense that there is a breach that's present in the case. They move for reconsideration after being told that they needed to find a breach in the contract in order to proceed. Their motion for reconsideration again failed to raise any contract provision that they felt they were entitled to. So on those two occasions when they were instructed that they needed to provide some kind of analysis of the insurance contract to lay out what was breached, they didn't do it. When we reached the motion for summary judgment phase, we had the Hanlon evidence which laid out precisely what had happened in this case, including the payment of $143,000 which was the undisputed losses in the case. We felt that we could draw the conclusion from the payments and the statement that we paid everything that we were supposed to pay under the policy and that all of those payments satisfied our obligations in the policy. So we raised the issue consistent with the approach that we had taken in the case all along. We had focused this case on a breach of contract. The procedures that we adopted were intended to focus this case on a breach of contract. And our conversation on all occasions was tell us what the breach of contract is. And then when we finally get them, none of them are in fact breaches of the contract. Did that answer your question? Thank you. I had one other just more sort of general question about Wisconsin insurance law Mr. Devine. And that is, would you agree that at least in some circumstances an unjustifiably delayed payment could wind up supporting a claim for breach and potentially bad faith? I imagine the insurer not having a good basis for refusing the payment and waiting basically until they're served with a with a proposed draft of a complaint. The case law in Wisconsin is that it has to be a breach of the contract. Can something that is a delay result in a breach? I suspect there are egregious activities out there that are tantamount to denial of the benefit. But I think that's the touchstone in Wisconsin. Whatever happens it has to be of such a that it is a denial of a benefit under your policy. Did that answer your question? Thank you. Good. I only have 30 seconds left. I strongly believe that we adopted policy and procedure here to focus this case on the specific issues that were required to be identified and adjudicated. I think we accomplished that and I think we were effective. Thank you. Thank you Mr. Devine. Mr. Gleisner, you had not quite two minutes. We asked you a lot of questions. Let's just make it three and you can say what you need to say. Thank you your honor. Your honor, first of all what Mr. Devine just said about a breach in Wisconsin is only he said there was only be an outrageous breach. That only becomes relevant if we're dealing with bad faith and we have taken the position and made it clear in our motion to reconsider that we are only dealing with a breach of contract here. Any kind of outrageous delay etc would be a in our view at least would be bad faith and we were not dealing with bad faith here. We're dealing just with breach of contract. Wasn't the basis of your breach of contract argument at that stage in the litigation that there had been a delay in the payments? In the district court we were dealing with we were not dealing we had not reached that point. We were only arguing for a breach of contract. The basis of that argument to both the motion for protective order and motion to reconsider was that there had been a delay in the payments. Your honor, the delay in payments is a is a major concern for us. We were never allowed to take any discovery any meaningful discovery here. But that's not accurate because although the court originally didn't give it to you once the summary judgment motion was filed you were allowed to take discovery you just didn't get as much time as you had hoped for. Well that's true your honor we didn't get very much time at all. But you had discovery and had the opportunity to conduct it. You're correct your honor but it was only at the last minute that we got discovery. Mr. Devine has indicated that delay is not a serious problem here. It was a serious problem and delay in Wisconsin is of itself a is of itself a basis for a breach of contract. The case I cited before stands for that proposition and says a delay in payment is a breach of contract under Wisconsin law. Even a delay is a breach of contract and the $37,000 was not paid until it wasn't paid at all actually. The $37,000 it paid on time could have perhaps assisted us in reinforcing the building so it wouldn't have sustained as much damage under the second tree fall. And I do think that our inability to take discovery did seriously hamper us in dealing with this case. My time has expired. All right thank you very much to both counsel the case is taken under advisement.